We'll hear argument this morning in Case 11-9307, Henderson v. United States. Ms. Gilley. Mr. Chief Justice, and may it please the Court, there are three primary points I would like to focus on this morning during my argument. First, the question presented by Mr. Henderson involves a very small subset of cases which come before the Court under Rule 55-52b each year. These are the cases that were referred to as the special case in the Olano decision. They have errors which, at the time of trial, were unsettled or unclear, but by the time they made it to the appellate court, they had become clear by a clarifying rule or a decision. Second, by the second— What about the time they come up here? 52b applies to every court, does it not? Yes, Your Honor. So suppose there's been no objection to a uncertain question, on an uncertain question of law, until the case gets here. Can counsel argue that this Court should nonetheless review the case? Because if we agree with counsel, thereupon the law would be clear. When we issued our decision, the law would be clear. I believe that the Court would have the authority to do that, because it says if it is on direct appeal or not yet final. So it would not yet be final unless the time had expired for the Petitioner to get to the Supreme Court. I wonder how we would go about deciding whether we would take such a case or not. We'd take all those cases where counsel says, we didn't raise any of these objections, neither in the court of appeals nor in the district court. But if you agree with me, Your Honors, that the law is thus and so, once you say that, that will make the decisions below clear error. And therefore, you should be able to reverse them. Makes sense, right? Well, I believe the Supreme Court has, under its own special rules, the ability to take an argument in a petition that has not been raised before, but on its own could accept it if it is clear at the time. But your first answer was that this is a very small set of cases that you're dealing with. If your answer to Justice Scalia is yes, this Court could take a case, it's unsettled, and by settling it, make the error plain, that would open the door to a huge number of cases, wouldn't it? I don't believe so, Your Honor. I believe that the provisions to get to the Supreme Court, frankly, I don't know the answer as to if you had skipped the appellate court, and we're still in that window of time, that transition period after the appellate court had ruled, and only then the clarifying error came. I think you could still come to the Supreme Court. But the very narrow, the very narrow issues. Well, it would be narrow in the sense that substantial rights would have to be affected and the other conditions that Alano met. But I think, consequent on Justice Scalia's question, is that itself would be another issue in every case. Is this one of those cases? Number one, it was wrong. Number two, it's new. Number three, is it clear under all the Alano criteria? And that would have to be decided in every case. So at the end of the day, it could be a small subset of cases. But the number that would be presented, both for this Court and the Court of Appeals, would be quite substantial. Well, I think there would be very few that would come directly to the Supreme Court. The vast majority of the cases, obviously, would come through the circuits. And what I was referring to as a very small subset would be those cases where there is actually an unsettled error, an unsettled claimed error at the trial. There are very few cases that would come out of the Supreme Court during the period of time of appeal that would allow for the petitioner to say, well, now it's clear. Well, this is a case — I mean, the time from the district court decision in this case to today is how long? It's — well, this case started in 2009. My client pled guilty in June of 2010. So it's two years. In any case in which — in a typical case in which this happens, you've got two years of cases, right? I think that my — this case, Mr. Henderson's case, is unusually long. In fact, it was a year between the time he was sentenced in June of 2010 until June of 2011 when Tapia was decided. So he was actually waiting between the period of the trial stage to — into the Fifth Circuit for over a year before Tapia was even decided, and then several months after that, before the Fifth Circuit ruled on the issue. So this is an unusually long period of time. I don't think that that's common. I think the vast majority of the cases do not come within that transitional period, as the Fifth Circuit noticed after Mr. Henderson's case in Escalante Reyes. They — Suis Ponte had their own — they called for an en banc in Escalante Reyes and changed the position that they had in Mr. Henderson's case. May I ask you what you think is the purpose of the Plain Error Rule? Suppose that it was proposed to amend Rule 52b to take out the word plain so that the rule would read simply, an error that affects substantial rights may be considered even though it was not brought to the Court's attention. So what does — in your judgment, what does the word plain add? What purposes does it serve? Your Honor, it serves a very important purpose. And I must say that my understanding of that has evolved considerably since I started researching this issue. I think it's very important. And it certainly is helpful to the practitioner, because when you come to the appellate court and you say, now I have a decision, it is now plain, or I have a rule, a statute that now makes this plain, it is a very important prong in the Alano. But what purpose does it serve? Why should the rule not be that if something — if there was an error, and it was a really — it was an error that really badly hurt the defendant, then it can be considered even though it wasn't raised at whatever time it has to have been — it wasn't raised, there wasn't an objection. What purpose does that serve? The purpose of 52b is a safety bill for the very extreme measures of Rule 51, which says if you fail to raise contemporaneous— Alito, but I'm not asking why we have — why we permit plain errors to be raised. I'm asking why do we require that the error be plain in order for it to be considered? Well, let me suggest two purposes it serves. It follows from the adversary system and it serves judicial efficiency. Would you agree with that? Those are the purposes of it?  Yes, Your Honor. All right. Does it serve those purposes better as applied at the time of trial or at the time of appeal? The finding, the assessment of plain error? Is that the question, Your Honor? Yes. I think that it very much helps to assess and evaluate the plainness of the error at the time of appeal. That — that is where it can really be helpful, and that, in fact, is what the Court did in both O'Connell and— Does it serve judicial efficiency better to say that we apply the plain error rule at the time of trial or at the time of appeal? I think that it serves judicial efficiency very much better. As amicus very well stated in his brief, the example of the Ninth Circuit, where if you don't have plain error and then the appellate court must go back to the trial level, the trial stage, and determine was this — was this clear at the time of trial was it clearly against the defendant, was it clearly— If you apply it at the time of trial, it may eliminate the need for an appellate court under some circumstances to get to the ultimate question of whether there was error. The Court could say there might have been error, but it wasn't — it's not plain to us, I suppose. So you have that efficiency. But if you apply it at the time of trial, you avoid retrials. So which is — which of those two is more consistent with the purpose of serving judicial efficiency? Well, I'm not sure that that would be a correct assessment. I think that the judicial efficiency would be more at the time of appeal because, as many of the circuits have noticed, that's what they're going — they agree. I think it's 8 to 2 that they find it. But when, as is the situation in this case, the law is uncertain at the time of trial, and there are some circuits that have gone one way, some circuits that have gone the other way, surely it greatly serves efficiency to bring that situation to the attention of the judge. He has a 50 percent chance of getting it right. And if he gets it right, then the case is done. Instead, your client did not raise any objection, and the judge just went ahead. Now, if the error was plain, you can say, well, you didn't need an objection. Any dumb judge would have known this. Okay? So you make that kind of an exception, but I don't see the reason for making that exception where you could have brought this to the judge's attention and he could have solved the problem. Or if he didn't solve it, maybe the prosecutor could have by making some alteration in what he was demanding as a punishment or whatever. That seems to me such a clear efficiency in the system. I don't know what the efficiency is when you do it at the court of appeals level. All you tell me is that, well, it saves you the trouble of going back and figuring out what the situation was at the trial, at the time of trial, right? But you've got to go back to the time of trial anyway to decide whether substantial rights have been affected, don't you? Well, I think, Your Honor, multiple parts to that question. First of all, I think there's — I think that the cases, the solicitors, the responders, respondents have conflated the idea of why we have 52B. It's not primarily for the efficiency of the judicial system. It's to correct a very serious wrong, an injustice that was incurred by the defendant. That's the primary purpose of 52B. And then if you look at it the way the court would — the solicitors would have the court decide at time of trial, there would be no remedy for people. But there's — this brings you back to Justice Alito's question. There's always an injustice when the district court has gotten it wrong. The district court got it wrong, applied the wrong ruling. Justice has not been served. But we don't say we're going to do justice. We say we're only going to do justice if it was clear. Now, why would you have that limitation on it? The only reason that limitation makes sense to me is because when it is clear, it doesn't have to be raised below. The judge ought to know better anyway. And so you're not sacrificing any efficiency. But if the whole purpose of it is just to do justice, I don't understand the reason for the clear limitation. Why should it only be when it's clear? Well, we have the rules of — going back to the Atkinson case, and the question was what happens when we have the very serious Rule 51 if you don't have contemporaneous objection, you're out of luck. Fortunately, we have the safety valve of 52B. And then this Court, looking at the — what was codified from Atkinson, has the four-prong test. First, we have an error. It must be clear. The reason for having it clear, first of all, it creates efficiency in the appellate-level court. The practitioner can now come and say, my client has a clear error. TAFIA has now been decided, and it is clear. It was only unclear and unsettled at the time we were in court. I suppose one answer to Justice Scalia's question is that, well, if you require an objection, you have to have a laundry list of everything that might change. But the answer to that, in turn, is if you use that rationale, then we're just asking the attorney to conceal from the judge everything that's important. And it would seem to me the laundry list, even though that's perhaps an initial objection to Justice Scalia's concern, is, frankly, preferable to a system where we just don't talk about what might be clear error. Well, I think we must talk about clear error. And I think that in my briefing and my — in my beginning to the closing brief, and certainly in the amicus brief, which is an excellent source on this point, when the Court looked at both 52B and both Olano and Johnson, they looked to the text, that this Court looked to the text of 52B. And the clear error that they looked at was they decided those cases on the basis that the error was clear at the time of trial. Where in Johnson did they — I'm looking at the two paragraphs the Court spent on this in Johnson. Where did they look at the text? I mean, obviously they quoted the text, but the analysis seems to me to be based solely on judicial efficiency. I think — and I would like to refer to Judge Owen's concurring and dissenting opinion in Escalante Rays in the Fifth Circuit. She addressed this quite well in the three pages of her — of her opinion, where Justice did, in a unanimous opinion, state — and let's see, I think footnote 5. No. I'm looking at where they talked about this particular question, the second prong, as they put it. Well, I believe that what Justice Rehnquist looked to was the text of — He was the Chief Justice. I'm sorry. Chief Justice Rehnquist. It matters to one of us. Yes, Your Honor. It's okay. And I noticed in my record that I, in fact, had promoted Justice Clark in my brief, which the errata shows, and so I'm not perfect. But the — Justice Rehnquist looked — and he talked specifically about looking at 52B and saying we're not going to expand on it, we're not going to cut it out of new cloth, we're not going to make new exceptions. We look for it as it is. And I think that was just a couple of lines after acknowledging the fact that the and it's futile and it's a waste of time. But that, I think, was more of an argument that went along with what the Chief Justice wrote, that we're looking at the text and it just doesn't make any sense. We've got Olano that says at the very minimum the error must be clear at the time of appeal. I wanted to go back to Justice Alito's question for a moment, because I thought Justice Scalia, I thought in your brief you said that their point's a good point. Their point is that the system works in a way that requires the lawyer to object at the trial. All right? And that is an efficiency, because the trial judge has to correct. He has to have an opportunity to correct mistakes. He can't be sandbagged. But you said, that's theoretically always true, but in your case, as a practical matter, it's really never true, because no lawyer is ever going to think, oh, I would object, but I'm not going to object because maybe the law will become clarified by the Supreme Court and I'll be able to get a plain error thing on appeal. The lawyer who thought that is like the unicorn. He doesn't really exist. Okay? And you then said, on the other hand, there's an efficiency on the other side. The efficiency on the other side is if you don't take your rule, when you get to the court of appeals, you're going to have to decide in real cases whether the law was so clear that the plain error doctrine still does apply at the trial level before either it was clear that the judge was wrong or it was clear the judge was right. And there's no point to objecting. So now we have to decide, was he clearly wrong, was he clearly right, or was it a middle case? And when you get to real legal cases that have tough issues, you discover that that's a hard question to act, answer, case by case, court by court. Didn't you say all that? Yes. Okay. Why didn't I hear you say it again? Let me ask you this question, counsel. Then let me ask you this related question. Something happens at trial. There isn't an objection. It goes up on appeal. And the appellate court, there's an argument about whether it's a plain error or not. And the appellate court says, first of all, we think it was an error. But it was a close question. We had trouble with this. So it wasn't plain. And therefore, this defendant is out of luck. What's the justification for that? I think that the four prongs of Alano are the justification. That's where I would have better reason. I mean, in real-world terms, what purpose is served by that? If the Court has concluded that there was an error and it affected substantial rights, but it wasn't plain, what justification is there for saying, that's too bad, you know, you really got hurt, but it wasn't clear to us, you know, it wasn't plain until we decided this case, so go back to prison? What's the purpose for that? Well, there is no purpose for that, and the appellate court has no purpose for that. And why should it have to be plain at the time of appeal? But the appellate court has the responsibility of applying the law as it is current. That's what the appellate court is directed to do. That's what Atkinson — that's what even — what Atkinson said. You apply the law at — as it is current. And so what you're doing by interpreting time of trial as the point of determining the clarity of the — of the error, you are completely eliminating the ability for the appellate court to even rule on that question, because there will never, ever be a plain error if you apply the time of trial as the point of determining whether it was clear or not. People like Marcion Henderson would never have an opportunity to have plain error because it would never be clear. We have to have — You could promote efficiency at the appellate stage by having a rule like the rule that we have in qualified immunity cases, which gives a court the discretion to decide whether something was clear or go to the — to the merits of the argument. You could — that's a — you can serve efficiency by having that. But the plain error rule doesn't do that. In the situation I gave you, the Court would say there was an error, it really affected your substantial rights, but we can't say it was plain to us until we decided this case and, therefore, you get no relief. And maybe there's a reason for that. I'm waiting for you to tell me what the reason for it is. Well, the reason would be similar to what Mr. Henderson faced in the three-judge panel. The judge — the panel said that the error was clear as far as they know it happened. Tapia said it happened, and there was no question about that. But the fact that it was not clear at the time of trial defeated Mr. Henderson's ability to get relief. So even though the Congress said you shouldn't put these people in jail for the purpose of rehabilitation, it was clear, everybody agreed it was wrong. But my client, instead of having the recommended 33 to 41 months, received a 60-month sentence. That's injust. Ginsburg. I think you represented your client at the trial. Yes, Your Honor. Is there a reason why you didn't bring this up when the judge imposed that sentence? I mean, there was — one thing is Tapia, but before that, there was a statute that says, Judge, don't lengthen sentences for purposes of rehabilitation. And you didn't call that statute to the attention of the judge, did you? I did not, Your Honor. And that was a — I knew that there was — certainly I was concerned, and I was — that the sentence was so much beyond what the sentencing guidelines had recommended. There was — the situation was I knew that at that point the guidelines were advisory. I couldn't figure — Were you aware of the statute? Is it time? I was not. In fact, I was not aware of that statute. And when I — I did file a Rule 35a motion eight days later, after I went and did my research, I realized there was only one case that I could find, in re sealed, out of the District of Columbia circuit, which had addressed that particular statute. And so I did file a Rule 35a motion, timely, eight days after, and asked the trial court, based on 3582a, to please correct that error in the sentencing. And let me ask you — I don't wish to sidetrack the discussion on the metaphysics of the plain error rule, because it's important and it's the heart of the case. But in this case, there wasn't going to be a new trial. There wasn't going to be a new jury. It's just a sentence. Has any argument been made that we should have a different rule for sentences than for errors that would require a new — a complete new trial? Your Honor, certainly Petitioner has not made that. But there are so many law review articles out there right now on ways of changing plain error review, how it might be modified. Some circuits have even said that. Some circuits have even said that. Yes. That is correct. The Second Circuit says that if it's a sentencing error, that the amount of substantial rights and the integrity and fairness of the preceding question is a different balance. That is correct. So you can bet, if you lose, you can't get through the door. If you win, you then have to go on to the next part of it, which says, did the error affect the fairness, integrity, or public reputation of judicial proceedings? So if all that's at stake is a resentencing, not much harm is done. And you're more likely to satisfy the fourth. If what's at stake is a whole new trial and everything, it's probably a little bit harder to satisfy that prong. So it's possible to build what Justice Kennedy was referring to into the present rule, isn't it? It could be possible, and it could be— Why is that so? Why is that so? Why does the effect upon the fairness of the proceedings change when it's sentencing or when it's the merits? I don't understand that. Well, I think that whenever— You're here complaining about sentencing. That's a substantial issue, isn't it? It is very substantial. And there's a recent case out of the Eleventh Circuit that I was going to call to the Court's attention, Judge Gorsuch, and his comment was, this is such a serious situation when we sentence a man or a woman to a time in prison when Congress says he should not be there. That is one of the ultimate injustices that we should look at. And I think that's looking at it from having a separate review system for sentencing certainly might be helpful. It could certainly be more speedy, although, frankly, in my case, it would not have helped Mr. Henderson because it took Tapia a year after my client was sentenced before Tapia was decided. Of course, I think the argument could have been made, and I certainly would have made it at the Fifth Circuit, if Tapia had not been decided by the time we made it to the Fifth Circuit, I would have argued that it was clear error. Regardless, the statute was very clear and that it was certainly, when the Court eventually did look at Tapia, they used a straightforward language of it. I think that the main point, another point that I did want to make is that by deciding that plainness should be determined at the time of appeal, this Court would be consistent with its holdings in Olano and in Johnson because in Olano, the Court said it would be, in this case, it is adequate that the error is plain at the time of appeal. In Johnson, the Court said there was, in fact, no error at the time of trial, but it is clear at the time of appeal. And so in both of those cases, the text of 52B, which is on page one in my brief, the text of the brief is what the Court relied on. And this Court said that based on that text, it's adequate that the Court find the appeal, find the error plain at the time of appeal. How many months are left for the defendant's sentence? He is scheduled to be released in May of 2013. He never did get the in-depth treatment program. He didn't. He did not. And it's unlikely he would have ever gotten it because of the fact that he had a gun charge. He pled guilty to a felon in possession of a firearm, which puts the individual at a very low eligibility for getting into the program. The RDAP program is very highly coveted because if completed successfully, it reduces the time that you're going to be incarcerated. But the judge was not aware of those impediments. The judge was very well aware, and that was part of the problem that we had. I was arguing at the time of sentencing for mitigating circumstances that my client really hadn't done anything. He had possessed this gun for about 10 minutes. The facts are not important to this Court. But he had done nothing seriously wrong with this. He did, in fact, commit the crime, and he was ready to take the punishment. The sentencing guideline range was 33 to 41. I did not object. The government did not object. And so I assumed it would be in that range. Thank you, counsel. Mr. Wall. Mr. Chief Justice, I may please the Court. The contemporaneous- Was Justice Breyer essentially correct that in most of the cases where an error is not plain at the time of trial, that the third and fourth prong of Alano almost always take care of the issue? I mean, I've been looking for a case in this Court in which more substantial errors than the one that occurred here were going to put aside the fact that I don't see how this defendant on the third or fourth could ever win, given that he was begging for drug treatment during his sentencing. So how a resentence would affect the fairness or integrity of this proceeding is beyond my understanding. But isn't Justice Breyer right? No, not in the government's view. I think it's a question for another day how much work the fourth prong is doing in the lower courts. But I would say in all of these cases, the defendant is claiming that his sentence was lengthened. I think in all of them he'll be able to meet the third prong and show that his substantial rights were affected. It becomes a fourth prong question then. And in the Escalante-Reyes case, one of the dissenting opinions attached an appendix in which the Fifth Circuit in 181 cases had found that fourth prong met and had found plain error satisfied. But I would say to you that that's more in keeping with what the attitude that Justice Kennedy asked about, which is I think most circuit courts believe the fourth prong is more easily met in sentencing than in trial cases. Whether they're right about that, that's not an issue we're facing today. The Second Circuit has adopted that rule. I don't know that other courts have, but it's really the prongs of the plain error review test are meant to serve different purposes. The third and fourth prongs are looking at harms to the defendant and to the judicial to the integrity of the judicial proceedings. The second prong is really designed to do something different. It's designed to enforce the contemporaneous objection requirement by isolating errors, the correctness. Sotomayor, why the very essence of 52b is when you don't make an objection? I mean, it's treating two different – it's addressing two different situations. A says when you've made an objection, you just have to prove prejudice, and B says you have to prove that substantial rights are affected. Oh, no question. The purpose of that prong is to isolate out one set of errors, obvious errors, from all of the other trial errors that happen every day that are not correctable under Rule 52, debatable errors, that even reasonably experienced district court judges and prosecutors might have overlooked in the hustle and bustle of a trial. That second prong is designed to say, we want, as the Court said in Frady, obvious, egregious errors that the trial court and the prosecutor were derelict in countenancing, because there we're not as worried about incentivizing the defendant to make a contemporaneous objection, because every party in the courtroom should have known and applied the law. And so— Ginsburg. Why doesn't that describe this case? I mean, here is a statute. Never mind Tapia. The statute says to the judge, don't lengthen the defendant's sentences for purposes of some cure. And if the judge was not aware of that statute, he surely should have been, the prosecutor shouldn't – wasn't it incumbent on the prosecutor to tell the judge, judge, sorry, you can't do that? Justice Ginsburg, I think it cuts actually exactly the opposite way. There was a longstanding circuit split that the Court resolved in Tapia. Courts had reached different conclusions on this. And if the defendant here had said, look, district court, you shouldn't lengthen my sentence based on rehabilitative purposes, some courts have found that is impermissible and you should follow those courts, not the courts that have permitted it, I think a fair reading of the sentencing transcript is that the district court was genuinely on the fence here about what to do with this particular defendant and whether to lengthen  I think that's the case. Ginsburg. But he was not aware of the statute. No one brought it to his attention. No. It is then exactly the kind of debatable, open, unsettled legal question that our adversarial system counts on parties to raise every day. And what we do in Rule 52 is we have a narrow safety valve for obvious errors that everyone in the courtroom should have caught. But I don't think that we could say that it's not. But what about the – I mean, that's the question. The word plain, of course, refers by and large to an error that the lower court judge should have caught, so you should have objected. But why limit it exclusively to that? That is, you have, you know, they quote the schooner Peggy and Chief Justice Marshall and back to the history of Hammurabi, as far as we know, that sometimes there is a case where just simple fairness, plus the fact that the law is now plain, means that the appellate court should treat this person the same as a thousand others who now will be treated according to the new law. And indeed, you're complicating it even further for the reason that I really meant my question to be aimed at you, you know. I mean, in fact, the reason that I said, that you're going to create distinctions. There will be a case, the fellow is going to go to jail for 50 extra years, the law is plain that he shouldn't, that didn't come about until the appeal, and here we have six identical people in a circuit where the law was clear one way and they get the new rule's advantage. And six identical people in another circuit where the law was clear the other way and they get the advantage. But in the one circuit where the law wasn't clear, he doesn't get the advantage of the new rule. Now, that seems pretty unfair, and I can at least make up some cases where it's just a horror. And if that's so, why don't we leave plain with enough wiggle room so that where it's fair, the judge on the court of appeals can say it is now plain and the other things are satisfied, so we apply it to the defendant. That's the whole long question. I've got every part of it in there. And I'll see if I can get them all in. So all I can say to you, Justice Breyer, is the same thing the Court has said in Puckett, Dominguez, Benitez, Young. That Rule 52 has an interest in error correction, egregious error correction, no question. But it is balanced against a very important systemic interest in judicial efficiency. And far from being a horror, that's a necessary corollary of our system. Kagan. Kagan. Kagan. Your whole argument about judicial efficiency is an incentives argument, and it depends upon the notion that a lawyer is going to change their behavior, a lawyer is going to make an objection that he otherwise wouldn't have made if the rule that Ms. Gilley proposes is accepted. And this goes back to what Justice Breyer said earlier, I don't know of a lawyer who would say the following to himself, I'm not going to make this objection because I'm just going to assume that sometime between now and my direct appeal, the law is going to change, and it's going to change in my favor, and when it changes, I'm going to be able to make this objection and get over not only prong two, but prong three and four of the test, and life will be grand for my client. Now, who's going to say that? Justice Kagan, it's not just about incentives. Even if I grant it, that the incentives of defendants would be entirely unchanged no matter what rule this Court adopted. And I don't grant that for all the reasons in our brief. But even if I thought that were right, every time a court of appeals or this Court issued an intervening decision of criminal law or criminal procedure, a set of defendants who had not raised a claim of that error at trial would come into the court of appeals or this Court with a claim of plain error. And what we would see is a significant shift of judicial resources to plain error cases, to do fact-intensive third and fourth prong review, to consider a set of errors that were never meant to be put on the table under Rule 52B. That's not what the safety valve was designed to do. So I can also not imagine a lawyer who intentionally makes that decision. That lawyer is a unicorn, I suppose. But I think there are a lot of lawyers who will not be as careful about finding all of the issues that they should bring to the Court's attention, perhaps be unaware of a statute that they should have been aware of, if we adopt the rule that's being urged by the Petitioner here. It does affect attorney behavior, for the attorney to know that stuff that he ought to know but doesn't know will not be able to be patched up on appeal. The government agrees with that, Justice Scalia. Well, should the government agree with that, really? Can you imagine, isn't it just as much of a unicorn for an attorney to say, I'm not going to take great care because I think that the law is going to change between now and the appeal and because I think I'm going to win on prongs two and three, three and four? I mean, nobody can think that those circumstances would arise. They're flukes when they arise. And so it doesn't affect either the attorney's intentional conduct or his level of preparation and care. Justice Kagan, I'm not here saying that I think lawyers are sitting in trial courts intentionally going through the kind of thought processes that you describe. But I think the effect that Justice Scalia is talking about is real. I think at the margins, which is what we're talking about when we're talking about these incentives, I do think that in cases like this one, I mean, this is the heartland where the district court says, I'm going to give you an above-guideline sentence in order for you to take a drug treatment class. Now, defendants all around the country at the time of Petitioner's trial were raising topia claims. This was not some novel legal claim, unknown. Why was it a topia claim? Why wasn't it simply, trial judge, the statute says imprisonment is not an appropriate means of promoting correction and rehabilitation. Why weren't those – why wasn't it really incumbent on the prosecutor to tell the judge? Just read those words. So, Justice Ginsburg, I didn't mean by topia claim, depending on the – because this Court hadn't issued topia. I mean a claim like the one in topia where defendants were saying, section 3582, the statute to which you're pointing, does not permit you, district court judge, to do this. Lots of defendants were making those claims. They were percolating up through the circuits. Even defendants in the Fifth Circuit were making that claim. Sotomayor, why is this whole test, as you're proposing it, dependent on the smartness  I mean, this, basically what you're saying is we reward the circuits and the judges who don't reach issues, because if the law is unsettled, then if a substantial right is affected that's so serious that it affects the fairness and integrity of a proceeding, that is not going to result in a reversal. It seems to me that if I'm a district court judge or a circuit court judge or anyone else, or a circuit court, I would try to avoid as many issues as I could because there's going to be as little set of reversals as possible. And going back to what Justice Ginsburg said, we take cases where the split is 8 to 1, okay, or 8 to 0 because a particular circuit hasn't gotten to an issue. Does this mean, as Justice Breyer said, that the eight circuits who got it right, the defendants have a Johnson plain error rule, and the one circuit who just didn't get to it doesn't? It's not about rewarding or faulting district courts. It's the way our system works. Where a court of appeals or this court issues a decision that governs a district court, that's the law. And the Court said in Frady, we count on the trial court and the prosecutor to bring those kinds of egregious errors to the court's attention. But where it's an open question. Sotomayor, but why isn't the focus of the system on the nature of the error? I think the focus of the system is on the contemporaneous objection requirement in Rule 51, which is what Rule 52 is designed to enforce. But 52B is about not making the objection. That's sort of going around in a circle. Well, only in the sense that what Rule 52B does is it says, okay, you didn't object. We will let you get a narrow form of relief, but only in the cases where your objection should have been unnecessary because there was governing law which everyone in the courtroom should have been able to point to, or where it would have been futile, because there was governing precedent the other way. Breyer, it's the second part. I mean, I think you'd have a stronger argument were it not for Johnson. But Johnson is saying, look, if you're in a circuit where the law turns out to be absolutely clearly wrong, then you don't have to make an objection, and then what we do is we consider whether the matter was clear at the time of appeal. Now, once I see that, it's like both bookends. You don't have to make the objection. And the only time you do is when the law is unclear, and that being so, we're going to have everybody doing research about how clear the law is one way or the other, which is going to be tough. But more importantly, it seems to me what's happening is that 52 is being also used in part to isolate those Peggy Schooner-type cases, where it is just basically unfair not to apply new law. And in the words of Justice Marshall, he says that should apply. And sometimes it's unfair not to apply it on the appeal. And so I don't see how you explain Johnson on your theory. I think Johnson, as the Chief Justice pointed out earlier, the analysis in Johnson is fairly brief. The Court did not discuss the text, history of the rule, or this Court's previous case. More than that, Johnson stood on its head, did it not, not to decide the case the easy way, which was simply to say if it's clear on appeal, the rule applies. It could have said that. The case would have been very easy. It instead avoided that by saying, oh, well, this is a very special case. It wouldn't be a special case if the argument presented by the Petitioner here were accepted. I don't — far from — far from appearing that Johnson supports Petitioner's case, I think Johnson tends to undermine it. Well, in danger of running afoul of Justice Kagan, I'm going to agree again. That's exactly the government's argument. If Johnson had resolved the broader question, it could not have set aside the question here. Well, the government had a different argument before. In Johnson, the government called this distinction an amorphous one, and it says nothing in the text of Rule 52b contemplates or permits any such distinction. An error is either plain or it is not. It is more faithful to the text of Rule 52b and simpler for the courts of appeals to obviate that distinction altogether, said the government. And this Court disagreed, but studiously avoided placing its decision on the text. This Court did not disagree. This Court took a half-step, and the question before us is still the question that was before you when you wrote this passage, you being the government, which is, should we distinguish between the Johnson case and this one? And you very clearly stated, both as to a matter of text and to a matter of what's simpler for the courts of appeals, that there should be no such distinction. Justice Kagan, there is no question that in the briefs and at argument, the government in Johnson asked this Court not to draw a futility exception to Rule 52 for cases in which an objection would have been pointless at trial in light of governing precedent. And the Court disagreed with us on that. And the question here is, is the Johnson tale going to wag the plain-haired dog? Johnson rested on a policy consideration that is just flatly inapplicable here. This is the heartland of cases in which a contemporaneous objection could have been quite helpful. This is not, as the Court said in Johnson, a case in which the defendant was being asked to make an objection that the district court was powerless to grant. The district court here, I think, was genuinely on the fence about what to do, and an objection could have been quite helpful. So to take, I mean, either the holding in Johnson, which was limited and could not have been if the Court had decided it on a broader ground, or the rationale, even taking just the rationale, that doesn't apply here. I think the only way you could read Johnson that would help Petitioner is to say it resolved the broader question of what the text of the rule requires regardless of context, and that's the one reading of Johnson that's just not persuasive on the face of the opinion. Breyer. Yeah, but the — well, this is — I mean, the trouble is you've run into, like, four different interpretations of what Johnson really means, and mine, which is perhaps no better or worse than the competing ones, is you go back to the schooner, Peggy, and you see the Chief Justice, and he says, in a case the law has changed. The court must decide according to existing law, the appellate court. And if it be necessary to set aside a judgment rightful when rendered, but which cannot be affirmed but in violation of the law, that judgment must be set aside. So there we seem to be, and Johnson seemed to me to bear this out, that sometimes you do forgive the need to object because the overriding principle is the principle of deciding the law as it is at the time of appeal, and to do the contrary is just too unfair. Now, that, reading Johnson that way, I'd say, well, that rule applies here, too. Sometimes. There is no question that that concern animated this Court's decision, retroactivity decision in Griffith. And there's no question that that is one of the concerns underneath the rule. But if it were the only concern. No, it's not. The rule wouldn't stay plain. As Justice Alito pointed out. Absolutely. I mean, that argument applies to whether the error was plain or not. Apply the law as it is. Yes, yes. And that's why you make a balance. And the balance brings back the first question that I put, because in this kind of a case where the law is unsettled, we have what we'll call the uniform or the hippogriff problem, and that's the problem of it doesn't really make that much difference to the basic policy of objecting. And on the other side, you have the administrative potential mess of having to figure out how clear was the law in the court, the district court. Is it a circuit where you'd say the law was pretty clear that they were right? Or is it a circuit where it's pretty clear that the law was the opposite, in which case we waive the need? Or is it actually mixed up and you don't know in that circuit, in which case you're arguing, don't waive the need? So I see the unicorn on one side versus an administrative problem on the other. So I want to suggest that the administrability problem is very small, because it has not been difficult for the lower courts to apply this test. And I want to suggest that there's a really significant cost on the other side, which is you're putting on the table an entire set of errors that Rule 52 was not designed to remedy, and you are diverting the resources of the judicial system toward those plain error cases. And you will see a set of such claims every time a court of appeals or this court issues a decision of criminal law or criminal procedure. In just this circuit alone, it has issued five opinions in the last year, considering just Tapia plain error claims. And that's just Tapia. And that's just one circuit. And I think the question is, what's the obvious prong designed to do? What's it there for? And it's got to be there to catch something. And what is there to screen out are errors that were debatable, that even reasonable district court judges and prosecutors might have missed, and catch errors that everyone in the courtroom should have recognized because they were egregious under the law as it stood at the time. Roberts Also, it strikes me that we're having a very unusual discussion in that we're competing policy considerations that have been raised. This is a rule with particular language, and I don't think we'd be having this type of a discussion if we were dealing with a statute. I think there would be a different focus. Obviously, the policy concerns would be raised, but in a different context. Do you have authority for the proposition that we have more flexibility in interpreting the Federal rules than we would in interpreting a statute? I mean, it highlighted, just to take another moment, it was highlighted for me in your brief when you said, well, Johnson, there was a special circumstance, so they read this rule this way. This is not a special circumstance, so we're going to read the rule a different way. Is it because these are rules as opposed to statutes? No. It's because we have Johnson. I mean, Mr. Dreeben stood here in Johnson and said we've got the most natural reading of the rule, and you shouldn't carve out a futility exception to it, and then, in our view, that is what the Court did. And it's not discussed in the past. Ginsburg What about with the Rules Advisory Committee? I mean, this is when 52b was put in the statute, they cited a case you cite in your brief, the Viborg or Viberg case. That was a kind of error. It was a sufficiency of the evidence error, the kind of thing you would expect a counsel to bring to the attention of the Court. And nonetheless, the Advisory Committee put it in as an example of how 52b should operate, and why? They said they put it in there because it was a matter vital to the defendant. So the objection wasn't made, so the contemporary objection rule was not observed. And nonetheless, the Court said we're going to take it, we're going to consider it on appeal because the matter is vital to the defendant. I can't imagine anything more vital than being deprived of 19 to 27 months of freedom. But Viborg falls squarely within what we all believe is the core of the rule. There wasn't sufficient evidence at trial. That would have been obvious to everyone in the courtroom, that the prosecution hadn't satisfied some element of the offense. There's no change in intervening law like what we're dealing with here. And I take your point, Mr. Chief Justice. We think that we've got by far the most natural reading of the text. It's backed up by the history. It's backed up by this Court's understanding in cases like Frady that it's designed to cure errors so egregious that the trial court and the prosecutor were derelict in countenancing them, as this Court said in Frady. And I don't see Petitioner or the amicus really taking issue with the government on that text or history or cases like Frady. I think they're resting it on Johnson. And for the reasons I tried to explain to Justice Kagan, I don't think any persuasive reading of Johnson gets them home. It could not have set aside this question if it had thought that it was resolving what the text of the rule, Mr. Chief Justice, meant more generally. Alito, what about Mr. Henderson? Sitting in prison, serving a sentence that we now know was imposed for a reason that is not permitted under Federal sentencing law. Is there anything that can be done for him? If it was very clear at the time that the statute prohibited this, would it have assistance of counsel for his attorney not to have made an objection? I think he could certainly raise that claim in habeas and attempt to get relief. But I don't think there is any relief for him under Rule 52. And I don't think that's the case. Is there any relief for him in the regulations of the Bureau of Prisons or the government other than pardon, I suppose? Well, he has been not specifically aimed at this, Justice Kennedy. I will say he has been eligible for the RDAP in the time that he's been in prison and he's never for the residential drug abuse treatment program that the district court wanted him to participate in. Counsel, I guess I continue to be confused about what makes error plain or clear. I don't know why the pronouncement of a circuit court accomplishes that. Meaning we said in Tapia that the statute is perfectly plain, perfectly clear. And so why shouldn't it have been clear to those circuits or to that district court judge at the time of trial? You're equating the plainness of error with what the outcome is in circuit courts. And I'm having trouble with that. Not invariably, Justice Sotomayor. It's possible to imagine a case in which a district court judge was not foreclosed from reaching some legal conclusion that nevertheless no reasonable judge would reach. I just think it's impossible to say that that's what Tapia was. You had courts that had reached different conclusions and you had a sentencing practice that had been in existence for decades. Now, this Court ultimately found and agreed, the government confessed error, and the Court agreed that that was an impermissible sentencing practice. But it was still an open, debatable legal question on which courts had reached different conclusions for many, many years. And I think to say to a district court judge in a circuit that has decided the question against the defendant, well, that's not clear law, I think a district court would look at you like, what are you talking about? I have an on-point court of appeals decision that tells me to do X or Y. Kagan. Mr. Wall, can I ask you about footnote 4 of your brief? This is the footnote in which you say that this case involves only a claim of sentencing error and it doesn't involve a claim of actual innocence based on an intervening decision. Is that footnote meant to suggest that you think, or at least that you contemplate the possibility that where there's an intervening decision making clear that conduct that a person had been convicted of was, in fact, not criminal, that you would think a different rule should apply, that the Johnson rule should apply? Wall, we are leaving open, if the Court says that there's an actual innocence exception in habeas to procedural default rules, that whatever it covers, acts that are no longer criminal, sentences beyond the statutory maximum, that whatever that exception covers, we leave open the possibility that you could also get relief for that under Rule 52, that those cases could, those exceptions could distract each other. Kagan. Because then that creates yet another complication in this interpretation of Rule 52. And one might say we just want a uniform rule, that it should all be at one time. And having said which time it should be at in Johnson, and having suggested that it should also be in the time of appeal for actual innocence claims, that it would be strange to carve out this single set of cases involving intervening changes of law and say those should be at the time of trial. Justice Kagan, I think far stranger than letting the Johnson tail wag the plean I think that was a bad footnote. I think you're, you know. Now I'm going to go to you, Ellen. But an honest footnote, an honest footnote. Well, but to let. You're saying there's this other category of cases that's lurking out there, and that category seems as though we should have the Johnson rule. But actual innocence isn't the tail. It's like the nub or the tip of the tail. And whatever the Court decides to do with actual innocence, it shouldn't dictate the interpretation of procedural rules more generally. But, you know, the one tail is Johnson and one tail is actual innocence. But this is just a tail, too. One tail, one nub. But the — Justice Kagan, this has not been difficult to apply. The lower courts doing this have not found it difficult to determine because the vast majority of cases, frankly, in the real world are like this one. Courts have reached different conclusions on a legal question, and this does not. But what harm does it do in the interest of simplicity and reading a word to mean what it says? The word is plain error. It doesn't say whether they mean plain error at the time of trial or plain at the time of appeal. Olano says it means plain at the time of appeal. If we say that's what it means, then that's what it means always. And what harm will that do, given the fact that still there's plenty of a good reason and appellate judges know their job not to send things back, where it's some technical matter where he's trying to sandbag the judge, where, in fact, now we have all the rule 4, the fourth prong consideration. Words mean what they say. I agree. And the rules suggest, by far the most natural reading, is that the plain error could have been brought to the Court's attention, the district courts, the one that committed the egregious error. And neither Petitioner nor Mikus has advanced any other textual interpretation. I mean, if we're writing it on text. Sotomayor, I don't understand how you get that from the rule. The rule says any plain error that affects substantial rights, even if it wasn't brought to the judge's attention. That's right. So that's the first clause. And the second clause is, even if not brought to the Court's attention, which suggests that that plain error, that egregious, obvious error, could have been brought to the district court's attention. Not that it was debatable at the time and it became clear later because an appellate judge opined. That is Mr. Dreben's excellent argument. And then Olano, rather Johnson, says the contrary. Again, Justice Breyer, Johnson did nothing, either as a matter of its holding or its rationale, to say what the rule requires more generally in cases like this one where a contemporaneous objection could have been quite helpful to the district court. I joined Johnson, and maybe I have to repudiate it if it leads to that conclusion. Justice Scalia, you did not join the relevant portion of Johnson. Oh, I didn't. Oh, thank God. So, counsel, you sound like me. I believe in the slippery slope. It is. And we're proving that today. It's fully open to you to agree with the government here. Mr. Wall, your time is up, but we have a rule, the Supreme Court has a rule, and I would like to know how the government reads it. It's our Rule 24 that says, we, this Court, may consider plain error not covered in the questions presented, but evident from the record. Is our rule, in your view, must the error be plain at the trial court stage, or is it enough that the error was plain at the court of appeals stage for us to apply our rule? I don't think there's anything about the text or history or the way that rule has been used that suggests it should be interpreted differently from Rule 52. Thank you, counsel. The case is submitted.